UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 19-mj-03548-Goodman

UNITED STATES OF AMERICA

vs.

ENRIQUE BLANCO RUBIO, AND
JESUS PADILLA OLIVERA,

    Defendants.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)? \_Yes X No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)? \_Yes X No

                                          Respectfully submitted,

                                          ARIANA FAJARDO ORSHAN
                                          UNITED STATES ATTORNEY

          By: *Carlee M. Valenti*
                Carlee M. Valenti
                Special Assistant United States Attorney
                Court I.D. No. A5502473
                11200 NW 20th Street, Suite 101
                Tel. 305-715-7646/ 7653
                carlee.valenti@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| ENRIQUE BLANCO RUBIO, AND | ) | Case No. 19-mj-03548-Goodman |
| JESUS PADILLA OLIVERA, | ) | |
| | ) | |
| | ) | |
| Defendant(s) | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __September 25, 2019,__ in the county of __Miami-Dade__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to Possess with Intent to Distribute Heroin |
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute Heroin |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_Complainant's signature_

Daniel Hansman, DEA Task Force Officer
_Printed name and title_

Sworn to before me and signed in my presence.

Date: Sep 26, 2019

_Judge's signature_

City and state: Miami, Florida

Jonathan Goodman, U.S. Magistrate Judge
_Printed name and title_

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Daniel Hansman, being duly sworn, attest and affirm the following:

1. I am a Task Force Officer of the Drug Enforcement Administration (DEA), U.S. Department of Justice (DOJ). As such, I am an investigative or law enforcement officer of the United States within the meaning of Title 21, United States Code, Section 878, as well as Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of offenses enumerated in Title 21 of the United States Code and Title 18, United States Code, Section, 2516(1)(e). I have been a DEA Task Force Officer since 2017. I am currently assigned to the Miami Field Division, High Intensity Drug Trafficking Area (HIDTA) Task Force Group 41.

2. This affidavit is submitted in support of a criminal complaint against defendants Jesus Gerardo Padilla OLIVERA ("OLIVERA") and Enrique Blanco- RUBIO ("RUBIO"). As explained in detail below, I respectfully submit that there is probable cause to believe that, on or about September 25, 2019 in Miami-Dade County, in the Southern District of Florida, the Defendants did conspire and possess with intent to distribute a controlled substance, that is: one (1) kilogram or more of a mixture or substance containing a detectable amount of Heroin, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

3. The information contained in this affidavit is based on my personal knowledge as well as information relayed to me by other law enforcement agents and officers involved in this investigation. The information set forth in this affidavit is provided solely for the purpose of establishing probable cause for the arrests of the Defendants. As such, it does not include all of the information known to me about this investigation.

4.	In or about September 2019, law enforcement received information from a DEA confidential source (CS) about a multi kilogram dealer from Fort Pierce, Florida. Throughout the course of the investigation, the narcotics dealer was identified as OLIVERA.

5.	On or about August 7, 2019, OLIVERA met with the CS to negotiate the purchase of five to ten kilograms of Cocaine, but they did not come to a final agreement. This meeting was audio and video recorded.

6.	After the meeting, the CS and OLIVERA began to communicate via encrypted text messages and calls regarding a separate narcotics transaction. The CS negotiated with OLIVERA to have five (5) kilograms of Heroin delivered to him/her in the South Florida area. The CS negotiated with OLIVERA for the purchase of three (3) kilograms of Heroin for $48,000 per kilogram, totaling $144,000 in cash, and an additional four (4) kilograms of Cocaine in exchange for the another two (2) kilograms of Heroin. Thus, totaling five (5) kilograms of Heroin that OLIVERA would provide to the CS in exchange for US Currency and Cocaine.

7.	On or about September 23, 2019, the CS and OLIVERA met at a restaurant in Weston, Florida to further discuss the details for OLIVERA to sell the CS five (5) kilograms of Heroin, three (3) kilograms for 48,000 per kilogram and an additional four (4) kilograms of Cocaine in exchange for the other two (2) kilograms of Heroin. This meeting was audio and video recorded.

8.	On or about September 25, 2019, the CS and OLIVERA arranged to meet in Miami-Dade, Florida. Once at the predetermined meet location, law enforcement observed OLIVERA's vehicle enter the parking lot and park his vehicle.

9.	At this time, law enforcement observed another male exiting from a red vehicle, and entering the passenger side of OLIVERA's vehicle. A short time later, the unknown male

exited from the passenger side of OLIVERA's vehicle and reentered his red vehicle. This person was later identified as RUBIO.

10. After RUBIO exited OLIVERA's vehicle, OLIVERA called the CS, and instructed the CS to go to his (OLIVERA's) vehicle. The CS walked over and entered the passenger side of OLIVERA's vehicle. Once inside the vehicle, the CS and OLIVERA had a meeting that was audio and video recorded, while under surveillance by law enforcement. OLIVERA showed the CS the Heroin, which was concealed inside of a plastic bag. The CS advised OLIVERA that the money and Cocaine were on its way.

11. Upon agreement, an undercover (UC) Agent arrived at the meet location to bring the money to exchange for the Heroin. The CS then exited from inside OLIVERA's vehicle and approached the UC in order to retrieve the money for the Heroin. At this time, a takedown signal was given and OLIVERA and RUBIO were arrested without incident. Law enforcement located the Heroin inside of a plastic bag in the vehicle on top of the center console.

12. Once in custody, OLIVERA gave a post-*Miranda* statement. OLIVERA admitted that he drove to the Miami-Dade County area to meet with the CS to sell one (1) kilogram of Heroin to the CS because he (OLIVERA) could not get the other kilograms of Heroin as previously discussed. OLIVERA further stated that he met with RUBIO earlier in the day at approximately 2:30 P.M. at a gas station in Sunrise, Florida. OLIVERA stated that RUBIO gave him a sample of the Heroin. OLIVERA then gave RUBIO the address where the transaction was going to occur with the CS. OLIVERA further admitted that RUBIO gave him (OLIVERA) the Heroin when RUBIO entered OLIVERA's vehicle in the parking lot. OLIVERA stated that he was to get paid $2,000 and RUBIO was to get paid $37,000 for the execution of the narcotics transaction.

13. RUBIO also gave a post-*Miranda* statement. RUBIO stated that he previously spoke to OLIVERA about this deal. RUBIO admitted that he met OLIVERA at a gas station in Sunrise, Florida prior to the deal. RUBIO also stated that he (RUBIO) gave the bag containing the Heroin to OLIVERA inside of OLIVERA's vehicle at the meet/ arrest location in Miami- Dade County. RUBIO admitted that he received the Heroin by mail days prior, which came from Los Angeles, California, and was wrapped in white sponges. Finally, RUBIO stated that he purchased the Heroin from a person in Mexico for $2,000.

14. Law enforcement conducted a presumptive field-test of the contents of the suspected Heroin OLIVERA and RUBIO sold to the UC. This test resulted in a positive result for the presence of approximately one (1) kilogram Heroin.

15. Based on the above facts, I submit there is probable cause to believe that, on or about September 25, 2019, in Miami-Dade County, in the Southern District of Florida, defendants OLIVERA and RUBIO did conspire and possess with intent to distribute a controlled substance, that is: one (1) kilogram or more of a mixture or substance containing a detectable amount of Heroin, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

FURTHER YOUR AFFIANT SAYETH NAUGHT.

DANIEL HANSMAN, TASK FORCE OFFICER
U.S. DRUG ENFORCEMENT ADMIN.

Subscribed and sworn to before
me this ___ th day of September, 2019.

HON. JONATHAN GOODMAN
UNITED STATES MAGISTRATE JUDGE

4